UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
NEW HOPE POWER COMPANY,         )
et al.,                         )
                                )
      Plaintiffs,               )
                                )
      v.                        )    Civil Action No. 09-2413 (RWR)
                                )
UNITED STATES ARMY CORPS OF     )
ENGINEERS, et al.,              )
                                )
      Defendants.               )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Okeelanta Corporation ("Okeelanta") and New Hope
Power Company ("New Hope") bring this action against the United
States Army Corps of Engineers ("Corps") and its director of
Civil Works, Steven Stockton, alleging that the Corps improperly
extended its jurisdiction under the Clean Water Act ("CWA") to
prior converted croplands without providing for public notice and
comment as is required by the Administrative Procedure Act
("APA").  The Corps and Stockton have moved to transfer venue to
the Southern District of Florida.  Because a transfer of venue to
the Southern District of Florida is in the interest of justice,
the motion to transfer will be granted.

<u>BACKGROUND</u>

Okeelanta is a sugarcane grower in Florida.  (Compl. ¶ 2.)
It owns a 20,000 acre plot of land in Palm Beach County, Florida
(the "Mill Lot") where the company grows sugarcane and operates a

sugar refining mill. (Id. ¶ 2; Defs.' Mot. to Transfer Venue

("Defs.' Mot.") at 6.) The Mill Lot is located within the

Everglades Agriculture Area ("EAA"), an area of the Florida

Everglades that the Corps drained for flood control purposes in

the late 1940s and 1950s and that has since been maintained as

farmland through a system of levees and pumps. (Compl. ¶ 8;

Defs.' Mot. at 3.) In 1993, Okeelanta informed the Corps'

Regulatory Field Office of the Miami District that it planned to

use part of its Mill Lot by building a renewable energy facility

and modifying the mill and refinery on sugarcane fields east of

the mill. (Compl. ¶ 44.) The Miami Regulatory Field Office

responded that the Corps would not exercise jurisdiction[1] over

the part of the Mill Lot that would be used for the construction

of the facility because "these wetlands have been determined to

be Prior Converted [Croplands] (PC) and are not regulated by the

[Corps] pursuant to Section 404 of the Clean Water Act." (Id.

¶ 45.)

---

[1] As mandated by section 404 of the CWA, the Corps regulates
discharges of dredged or fill material into waters of the United
States, including "wetlands," under guidelines set forth by the
United States Environmental Protection Agency ("EPA") in
conjunction with the Secretary of the Army acting through the
Chief of Engineers. 33 U.S.C. § 1344(a). Beginning in the late
1970s and continuing into the late 1980s, the Corps did not
consider wetlands that had been converted to dry land as falling
within Corps jurisdiction under the general requirements of the
CWA. (Compl. ¶ 24.) A Final Rule jointly promulgated in 1993 by
the EPA and the Corps stated "waters of the United States do not
include prior converted cropland." (Compl. ¶ 37; 33 C.F.R. §
328.3(a)(8)).

New Hope is a renewable energy company that provides electricity to Okeelanta. (Compl. ¶ 3.) New Hope holds a ground lease from Okeelanta for the land adjacent to the sugar refining mill and runs the renewable energy facility on that land. (<u>Id.</u> ¶ 3; Defs.' Mot. at 6.) In 2008, New Hope decided to expand the renewable energy facility by converting approximately 150 acres of cropland to build a landfill for the ash waste generated by the facility, which would enable New Hope to avoid trucking the ash to a landfill located approximately 60 miles away. (Compl. ¶ 3.) To that end, in May 2008, New Hope submitted to the State of Florida a petition for permission to expand the size of the renewable energy facility from 82.1 acres to 349.3 acres, 150 of which would be used as the ash landfill. The expansion would disturb 32 acres of prior converted cropland in the Mill Lot. (<u>Id.</u> ¶ 48; Defs.' Mot. at 7.)

In January 2009, the Jacksonville District of the Corps prepared an Issue Paper that set forth the Jacksonville District's methodology for conducting jurisdictional determinations regarding proposed nonagricultural activities in the EAA. (Compl. ¶¶ 52-53; Def.'s Mot. Ex. A ("Issue Paper").) The Issue Paper critiqued an earlier method used to designate prior converted cropland in the EAA and set forth an approach the Jacksonville District would use going forward. (Compl. ¶¶ 54, 57-58.)

Under 33 C.F.R. §§ 320.1(a)(6), the Corps may make upon request a jurisdictional determination to decide whether a putative "water of the United States" is within its CWA regulatory jurisdiction, and therefore whether a permit would be necessary to conduct work in those waters. According to the defendants, the authority to make these determinations has been delegated to the Corps' district offices. (Defs.' Mot. at 3.) In January 2009, the Jacksonville District of the Corps acquired from the State of Florida a copy of New Hope's petition to modify its permit to operate the renewable energy facility. (Compl. ¶ 72.) The Corps advised New Hope that the Corps was reviewing the petition as an application for a Section 404 permit. It asked for additional information relating to New Hope's application for an expansion of its renewable energy facility because the expanded facility area may have contained waters of the United States. (Id. ¶ 73.) In February 2009, New Hope responded that no application had been submitted to the Corps, and that there were no waters of the United States on the Mill Lot because the Mill Lot consisted of prior converted cropland. (Id. ¶ 74.)

In March 2009, the Jacksonville District of the Corps sent the Issue Paper to the Corps' headquarters in Washington, D.C. seeking review and comment. In April 2009, headquarters official Steven L. Stockton responded, agreeing with the district's

approach and finding it consistent with national policy.  (Compl. ¶ 62; Defs.' Mot. Ex. B.)  This memorandum was transmitted to New Hope in May, 2009.  New Hope responded by asking the Jacksonville District whether that memorandum was the "final decision on how these jurisdictional rules [would] be applied in the EAA," and whether there was "any chance that the Jacksonville District would be open to applying the jurisdictional rules in a different way with regard to an individual project."  (Compl. ¶ 78; Defs.' Mot. at 7.)  According to the plaintiffs, the Jacksonville District responded that the jurisdictional approach "will be applied to any activity in the EAA that constitutes a change in use from agriculture" and that each "individual project in the EAA will be assessed based on this approach and the onsite conditions."  (Compl. ¶ 79.)  In July and August of 2009, the Corps requested that New Hope provide additional information regarding its application for a Section 404 permit.  In September 2009, the Corps notified New Hope that since the additional information was not provided, its section 404 application would be considered withdrawn.  (Compl. ¶ 81; Defs.' Mot. at 7.)  The plaintiffs filed their complaint in this case in December 2009, arguing that the Corps made a final determination that the Mill Lot was wetland under Corps jurisdiction, and that the Corps' action constituted rulemaking that violated the APA because the Corps had not engaged in notice and comment

rulemaking. (Compl. ¶¶ 82, 89, 105-139.) The defendants counter that the Corps has not made any final determination regarding the regulatory status of the Mill Lot. (Defs.' Mot. at 7.)

The defendants have moved to transfer venue to the Southern District of Florida alleging that the claim has little connection to the District of Columbia and the case implicates a strong public interest of hearing questions regarding the Everglades in Florida. (Defs.' Mot. at 1-2.) The plaintiffs oppose transfer, arguing that transfer would be inappropriate because the challenged actions were issued in the District of Columbia and are of national importance. (Pls.' Opp'n at 1.)

DISCUSSION

"A case may be transferred to another venue under 28 U.S.C. § 1404(a) '[f]or the convenience of parties and witnesses, in the interest of justice[.]'" Fanning v. Trotter Site Preparation, LLC, 668 F. Supp. 2d 60, 62 (D.D.C. 2009) (citing 28 U.S.C. § 1404(a) and Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981)). The moving party carries the burden of showing that transfer is warranted. See Montgomery v. STG Int'l, Inc., 532 F. Supp. 29, 32 (D.D.C. 2008). "The decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary." In re DRC, Inc., 358 Fed. Appx. 193, 194 (D.C. Cir. 2009). To adjudicate a motion to transfer, the district court conducts an individualized,

"factually analytical, case-by-case determination of convenience
and fairness." SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154
(D.C. Cir. 1978).

As a threshold issue, transfer under § 1404(a) is restricted
to those venues in which the action "might have been brought."
28 U.S.C. § 1404(a) (2006); see also Robinson v. Eli Lilly and
Co., 535 F. Supp. 2d 49, 51 (D.D.C. 2008).  Under 28 U.S.C.
§ 1391,

> [a] civil action in which a defendant is an officer or
> employee of the United States or any agency thereof
> acting in his official capacity or under color of legal
> authority, or an agency of the United States, or the
> United States, may, except as otherwise provided by
> law, be brought in any judicial district in which
> (1) a defendant in the action resides, (2) a
> substantial part of the events or omissions giving rise
> to the claim occurred, or a substantial part of
> property that is the subject of the action is situated,
> or (3) the plaintiff resides if no real property is
> involved in the action.

28 U.S.C. § 1391(e).  Here, venue is proper in the Southern
District of Florida in part because plaintiffs' property, the
Mill Lot, is located in Palm Beach County, which is within the
Southern District of Florida.  (Compl. ¶¶ 1-2; Defs.' Mem. at 1.)

"After determining that venue in the proposed transferee
district would be proper, a court then 'must weigh in the balance
the convenience of the witnesses and those public-interest
factors of systemic integrity and fairness that, in addition to
[the] private concerns [of the parties], come under the heading

of 'the interest of justice.'" <u>Demery v. Montgomery County</u>, 602
F. Supp. 2d 206, 210 (D.D.C. 2009) (quoting <u>Stewart Org. Inc. v.
Ricoh Corp.</u>, 487 U.S. 22, 30 (1988)).  "'The private interest
factors that are typically considered include 1) the plaintiff's
choice of forum, 2) the defendant's choice of forum, 3) where the
claim arose, 4) the convenience of the parties, 5) the
convenience of the witnesses, particularly if important witnesses
may actually be unavailable to give live trial testimony in one
of the districts, and 6) the ease of access to sources of
proof.'" <u>Greene v. Nat'l Head Start Ass'n.</u>, 610 F. Supp. 2d 72,
74-75 (D.D.C. 2009) (quoting <u>Demery</u>, 602 F. Supp. 2d at 210).
"'Public interest factors include 1) the local interest in making
local decisions about local controversies, 2) the potential
transferee court's familiarity with the applicable law, and
3) the congestion of the transferee court compared to that of the
transferor court.'" <u>Greene</u>, 610 F. Supp. 2d at 75 (quoting
<u>Demery</u>, 602 F. Supp. 2d at 210).  Transfer should be granted
where the balance of private considerations of the parties of
convenience and fairness and public concerns, such as systemic
integrity, weigh in its favor.  <u>See</u> <u>Devaughn v. Inphonic, Inc.</u>,
403 F. Supp. 2d 68, 72 (D.D.C. 2005); <u>Trout Unlimited v. U.S.
Dep't of Agric.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

I.   PRIVATE INTERESTS

When two potentially proper venues are proposed, the plaintiffs' choice of forum is frequently accorded deference, particularly where the plaintiffs have chosen their home forum and many of the relevant events occurred there.  <u>Great Socialist People's Libyan Arab Jamahiriya v. Miski</u>, 496 F. Supp. 2d 137, 144-145 (D.D.C. 2007) (citing <u>Reiffin v. Microsoft Corp.</u>, 104 F. Supp. 2d 48, 52 (D.D.C. 2000) (internal citations omitted)). However, less deference to the plaintiff's choice of forum is warranted where the chosen forum is not plaintiff's home forum. <u>Marks v. Torres</u>, 576 F. Supp. 2d 107, 111 (D.D.C. 2008) (citing <u>Piper Aircraft</u>, 454 U.S. at 255-56 and <u>Zakiya v. United States</u>, 267 F. Supp. 2d 47, 59 (D.D.C. 2003)); <u>see also Shawnee Tribe v. United States</u>, 298 F. Supp. 2d 21, 24 (D.D.C. 2002).  In addition, where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the plaintiff's choice of forum is further weakened.  <u>Aftab v. Gonzalez</u>, 597 F. Supp. 2d 76, 80 (D.D.C. 2009); <u>see also</u> <u>Comptroller of Currency v. Calhoun Nat'l Bank</u>, 626 F. Supp. 137, 140 n.9 (D.D.C. 1985).  Deference to plaintiffs' choice of forum is further "'diminished where, as here, transfer is sought to the plaintiffs' resident forum.'"  <u>Airport Working Group of Orange County v. United States Department of Defense</u>, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (quoting <u>Miccosukee Tribe of Indians v.</u>

United States, Civil Action No. 99-2464 (RWR), slip op. at 5 (D.D.C. December 27, 2000)).

Here, this action's ties to the District of Columbia are insubstantial and its ties to Florida are substantial. The land at issue in this case is in Florida. The Issue Paper reflecting how jurisdiction over EAA land will be assessed was drafted by the Corps' district office in Florida. While Stockton embraced the Issue Paper's methodology, that Florida Office, not headquarters in the District of Columbia, will evaluate whether section 404 applies to plaintiffs' land.

The plaintiffs argue that Stockton's April 2009 memorandum demonstrates a sufficient involvement by an official in this district to support deferring to their choice of forum. However, "[m]ere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative" of whether the plaintiffs' choice of forum receives deference. Stockbridge-Munsee Cmty. v. United States, 593 F. Supp. 2d 44, 47 (D.D.C. 2009) (transferring case and refraining from deferring to the plaintiffs' choice of forum despite the fact that "the administrative action at issue in this case arose in Washington") (internal quotations and citations omitted); Sierra Club v. Flowers, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (granting transfer and according the plaintiffs' choice of forum little deference where the federal officials in

Washington, D.C. played no active role in the decision and the national significance of the Everglades ecosystem by itself was insufficient to support deferring to plaintiff's forum choice); Shawnee Tribe, 298 F. Supp. 2d at 25 (transferring case from the District of Columbia to Kansas and de-emphasizing plaintiff's choice of forum because "the decisionmaking process, by and large, has not been substantially focused in this forum" although "some officials from the GSA and the Department of Interior who work in the Washington, D.C. area [were] involved"); Trout Unlimited, 944 F. Supp. at 17 (transferring case from the District of Columbia to Colorado where administrative decision was made and noting that deference to plaintiff's choice of forum was mitigated because limited involvement by Washington, D.C. based officials gave the District of Columbia "no meaningful ties or interest in this suit"); Southern Utah Wilderness Alliance v. Norton, Civil Action No. 01-2518 (CKK), 2002 WL 32617198, at *3 (D.D.C. June 28, 2002) (transferring case from the District of Columbia to Utah where "the relationship between the challenged agency action -- the sale and issuance of twelve oil and gas leases granted by the Utah Bureau of Land Management -- and this District is attenuated at best"); Airport Working Group of Orange County, 226 F. Supp. 2d at 230 (transferring case from the District of Columbia to California and according the plaintiff's choice of forum limited deference, even though the record of

decision was signed by an official in D.C., because most of the
work on which the ultimate decision was based occurred in
California). Even though plaintiffs have framed their claim as a
challenge to flawed headquarters rulemaking, the gravamen of this
controversy is how the Florida district office will evaluate
whether it will exert jurisdiction over plaintiffs' land.
"'Courts in this jurisdiction must . . . guard against the
danger that a plaintiff might manufacture venue in the District
of Columbia'" by framing a cause of action as involving a federal
government official or agency in this district in a suit that
"'properly should be pursued elsewhere.'" <u>Marks</u>, 576 F. Supp. 2d
at 111 (quoting <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 256 (D.C.
Cir. 1993). Because the plaintiffs did not bring this claim in
their home forum, this case lacks meaningful ties to the District
of Columbia, and defendants seek transfer to the plaintiffs' home
forum, the plaintiffs' choice of forum will be accorded little
deference and the choice of forum factors favor transfer.

Regarding the remaining private interest factors, the
defendants' primary argument is that the claim arose in Florida,
and the case should be transferred there. (Defs.' Mot. at 12-
14.) The plaintiffs argue instead that their claim arose in the
District of Columbia, and that the District of Columbia is no
less convenient for any party than is the Southern District of
Florida. (Pls.' Opp'n at 13-15.) The plaintiffs' claim as

framed, whether or not it is ripe or has any merit, is that the Stockton memorandum issued in this district was an agency rulemaking that did not comply with the APA's procedural requirements. This factor only slightly favors venue here since, as is noted above, the gravamen of this controversy centers on Florida decision-making. Since the plaintiffs claim no inconvenience to them in either this district or their home district and the Corps operates both here and in Florida, the fourth factor favors neither side. Likewise, the fifth and sixth factors regarding convenience of witnesses and access to proof are neutral as both parties concede that judicial review would be limited to the administrative record (Pls.' Opp'n at 16; Defs.' Mot. at 15), and neither side argue that these factors favor either side. On balance, the private interests tilt in favor of transfer.

## II. PUBLIC FACTORS

The plaintiffs argue that the District of Columbia is more familiar with the APA than is the Southern District of Florida. (Pls.' Opp'n at 16-17.) However, the federal district courts are presumed to be equally capable of interpreting the federal law governing an APA claim. Thus, this factor is neutral. See Aftab, 597 F. Supp. 2d at 83. While the plaintiffs note and the defendants acknowledge that the Southern District of Florida received more filings than did the District of Columbia in 2008

and 2009 (Defs.' Mot. at 19; Pls.' Opp'n at 17), the defendants
point out that "the median time interval from filing to
disposition of cases is longer in D.C. than it is in Florida.
(Defs.' Mot. at 19, Ex. E.)  This factor, then, is also neutral.

Defendants persuasively argue that the "local nature of this
case is the decisive factor in the balancing of interests
pursuant to 28 U.S.C. 1404(a)."  (Defs.' Reply at 2.)  "[T]he
interests of justice are promoted when a localized controversy is
resolved in the region that it impacts."  Nat'l Wildlife Fed'n v.
Harvey, 437 F. Supp. 2d 42, 50 (D.D.C. 2006).  "Considerations
affecting whether a controversy is local in nature include 'where
the challenged decision was made; whether the decision directly
affected the citizens of the transferee state; the location of
the controversy, . . . and whether there was personal involvement
by a District of Columbia official.'"  Intrepid-Potash, 669 F.
Supp. 2d at 98-99 (citing Otay Mesa Property L.P., v. U.S. Dep't
of Interior, 584 F. Supp. 2d 122, 126 (D.D.C. 2008).  Here, as is
noted above, the substantive decision reflected in the Issue
Paper was made in Florida.[2]  The location of the controversy is
the EAA, which is in the Southern District of Florida.  Citizens
of Florida, not the District of Columbia, will be most directly
affected by the Corps' jurisdictional determinations regarding

---

[2] Plaintiffs' cause of action makes a procedural attack on
the Stockton memorandum endorsing the decision.

proposed nonagricultural activities in the EAA.  While there was
personal involvement by an official in D.C. after the Issue Paper
was released, it was brief and limited, in stark contrast to the
involvement of officials in cases where transfer was denied.
See, e.g., Wilderness Society v. Babbitt, 104 F. Supp. 2d 10, 14
(D.D.C. 2000) (denying transfer of a case pertaining to the
national petroleum reserve where there were public meetings
regarding the reserve held in Washington, D.C., and where the
Secretary of the Interior visited the area at issue, met with
interested parties, signed the record of the decision, and gave a
public briefing about his decision).

The public factors, then, weigh in favor of transferring
this case to the Southern District of Florida.

<u>CONCLUSION AND ORDER</u>

The balance of private and public interests weighs in favor
of transfer.  Accordingly, it is hereby

ORDERED that defendant's motion [5] to transfer venue be,
and hereby is, GRANTED.  The Clerk is directed to transfer this
case to the United States District Court for the Southern
District of Florida.  It is further

ORDERED that defendants' motion [19] to extend time to
respond to plaintiffs' motion for a preliminary injunction and
stay briefing on plaintiffs' motion for summary judgment be, and
hereby is, GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

Defendants shall have until July 26, 2010 to respond to
plaintiffs' motion for a preliminary injunction.  Defendants'
request for a stay is denied without prejudice to renewing it
upon transfer.  All remaining motions are left for decision by
the transferee court.

SIGNED this 20th day of July, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge